**PD-1101-15**
IN THE COURT OF CRIMINAL APPEALS
OF THE STATE OF TEXAS

MELVIN EUGENE FLETCHER
*Appellant*

v.

THE STATE OF TEXAS
*Appellee*

On Petition for Discretionary Review from the Fourteenth Court of Appeals
Cause No. 14-14-00177-CR
Affirming the Conviction in Cause Number 1376099
Of the 185th District Court of Harris County, Texas

PETITION FOR DISCRETIONARY REVIEW

ALEXANDER BUNIN
Chief Public Defender
Harris County, Texas

DAUCIE SCHINDLER
Assistant Public Defender
Harris County, Texas
TBN 24013495
1201 Franklin, 13th Floor
Houston, Texas 77002
Phone: (713) 368-0016
Fax: (713) 368-9278
Daucie.schindler@pdo.hctx.net

**Counsel for Petitioner**

RECEIVED IN
COURT OF CRIMINAL APPEALS

October 21, 2015

ABEL ACOSTA, CLERK

## IDENTITY OF PARTIES AND COUNSEL

Appellant:                           Mr. Melvin E. Fletcher
                                     SPN No. 01403640
                                     Harris County Jail
                                     1200 Baker Street 5E/1A
                                     Houston, Texas 77002

Defense Counsel on Appeal:           Daucie Schindler
                                     Assistant Public Defender
                                     1201 Franklin Street, 13th Floor
                                     Houston, Texas 77002

Defense Counsel at Trial:            **Pro Se**

Trial Prosecutor:                    Mr. Aaron Burdette
                                     Ms. Janna Oswald
                                     Assistant District Attorneys
                                     1201 Franklin Street, 6th Floor
                                     Houston, Texas 77002

Visiting Judges at Trial:            Honorable James Anderson &
                                     Honorable Brian Rains -
                                     185th District Court
                                     Harris County, Texas
                                     1201 Franklin Street, 17th Floor
                                     Houston, Texas 77002

# TABLE OF CONTENTS

IDENTITY OF PARTIES AND COUNSEL ........................................................................ ii

TABLE OF CONTENTS ............................................................................................. iii

INDEX OF AUTHORITIES ......................................................................................... iv

STATEMENT REGARDING ORAL ARGUMENT ............................................................ 2

STATEMENT OF THE CASE ...................................................................................... 2

STATEMENT OF PROCEDURAL HISTORY .................................................................. 3

GROUND FOR REVIEW ........................................................................................... 3

> **GROUND ONE:** Did the Panel err in determining that the trial court's questions and admonitions ensured that Mr. Fletcher's waiver of counsel was competent, knowing, intelligent, and voluntary as required by *Faretta v. California*, 422 U.S. 806 (1975)?
>
> **GROUND TWO:** Did the Panel err in determining that the trial court did not abuse its discretion by allowing Mr. Fletcher to conduct his own defense at trial?

REASONS FOR REVIEW ........................................................................................... 3

STATEMENT OF FACTS ........................................................................................... 3

> **GROUND ONE:** Did the Panel err in determining that the trial court's questions and admonitions ensured that Mr. Fletcher's waiver of counsel was competent, knowing, intelligent, and voluntary as required by *Faretta v. California*, 422 U.S. 806 (1975)?

ARGUMENT ........................................................................................................ 12

> **GROUND TWO:** Did the Panel err in determining that the trial court did not abuse its discretion by allowing Mr. Fletcher to conduct his own defense at trial?

ARGUMENT ........................................................................................................ 18

Prayer ............................................................................................................. 23

Certificate of Compliance ........................................................................... 24

Certificate of Service ................................................................................... 25

Appendix ....................................................................................................... 26

# INDEX OF AUTHORITIES

## Cases

*Adams v. United States ex rel. McCann,* 317 U.S. 269 (1942) ..................................................18

*Chadwick v. State,* 309 S.W.3d 558 (Tex. Crim. App. 2010) .................................................24

*Collier v. State,* 959 S.W.2d 621 (Tex. Crim. App. 1997) ......................................................18

*Faretta v. California,* 422 U.S. 806 (1975) ..................................................................17, 18, 21, 23

*Fletcher v. State,* --- S.W.3d ---, No. 14-14-00177-CR, 2015 WL 4984532 (Tex. App. -Houston [14th Dist.] Aug. 20, 2015, pet. pending) ..........................................................19, 23

*Geeslin v. State,* 600 S.W.2d 309 (Tex. Crim. App. 1980) ................................................17, 22

*Gideon v. Wainwright,* 372 U.S. 335 (1963) ............................................................................17

*Godinez v. Moran,* 509 U.S. 389 (1993) ...................................................................................24

*Indiana v. Edwards,* 554 U.S. 164 (2008) ......................................................................23, 24, 25

*Johnson v. Zerbst,* 304 U.S. 548 (1938) .....................................................................................17

*Jordan v. State,* 571 S.W.2d 883 (Tex. Crim. App. 1978) ......................................................17

*Massey v. Moore,* 348 U.S. 105 (1954) ......................................................................................25

*Taylor v. State,* 268 S.W.3d 571 (Tex. Crim. App. 2008) ......................................................25

*Trevino v. State,* 553 S.W.2d 750 (Tex. Crim. App. 1977) .....................................................17

*Von Moltke v. Gillies,* 332 U.S. 708 (1948) .............................................................................18

*Wheat v. United States,* 486 U.S. 153 (1988) ...........................................................................25

*Williams v. State,* 925 S.W.2d 272 (Tex. App. -Corpus Christi 1996, no pet.) ...................19, 20

*Williams v. State,* 252 S.W.3d 353 (Tex. Crim. App. 2008) ...................................................22

## Constitutional Provisions

U.S. Const. Amend. VI................................................................................17

U.S. Const. Amend. XIV.............................................................................17

## TO THE COURT OF CRIMINAL APPEALS OF TEXAS:

Melvin Eugene Fletcher, the defendant/appellant below, petitions for review of the Fourteenth Court of Appeals' judgment affirming his convictions.

## STATEMENT REGARDING ORAL ARGUMENT

Oral argument is requested because it would aid the Court in the resolution of the case.

## STATEMENT OF THE CASE

Mr. Fletcher was charged with the state jail felony offense of theft of metal. The charge was enhanced with two prior state jail convictions for the same offense. (C.R. at 13). Mr. Fletcher was represented by court appointed counsel until July 23, 2013, when a *Faretta* hearing was conducted and thereafter Mr. Fletcher was *pro se*. On February 10, 2014, he entered a plea of not guilty and proceeded to trial by jury. On that same day, the jury found Mr. Fletcher guilty as charged. (C.R. at 142). Mr. Fletcher did not file an election as to punishment. After a hearing on February 12, 2014, the trial court found the two enhancement paragraphs true and sentenced him to seven (7) years imprisonment in the Institutional Division of Texas Department of Criminal Justice. (C.R. at 143-44). Mr. Fletcher filed timely notice of appeal on February 19, 2014. (C.R. at 148). Mr. Fletcher was *pro se* on appeal until June 3, 2014, when the case was abated and remanded to the trial court for the appointment of appellate counsel. Undersigned counsel, Daucie Schindler, of The Harris County Public Defender's Office was appointed to represent Mr. Fletcher on June 4, 2014. (Supp. C.R. at 5).

2

## STATEMENT OF PROCEDURAL HISTORY

On August 20, 2015, in a published opinion in Cause No. 14-14-00177-CR, the Fourteenth Court of Appeals affirmed Mr. Fletcher's conviction. Mr. Fletcher did not motion the panel for rehearing.

## GROUNDS FOR REVIEW

**GROUND ONE: Did the Panel err in determining that the trial court's questions and admonitions ensured that Mr. Fletcher's waiver of counsel was competent, knowing, intelligent, and voluntary as required by *Faretta v. California*, 422 U.S. 806 (1975)?**

**GROUND TWO: Did the Panel err in determining that the trial court did not abuse its discretion by allowing Mr. Fletcher to conduct his own defense at trial?**

## REASONS FOR REVIEW

Review is proper under Tex. R. App. P. 66.3(c) because the Fourteenth Court of Appeals opinion conflicts with applicable decisions of the United States Supreme Court and the Court of Criminal Appeals.

## STATEMENT OF FACTS

On February 4, 2013, Ms. Jamie Sulla was appointed to represent Mr. Fletcher on the charge of theft of metal alleged to have been committed on February 2, 2013. (C.R. at 7, 9). Ten days after accepting appointment as counsel in this case, Ms. Sulla requested a psychiatric review of Mr. Fletcher based on the fact that the "client cannot communicate with me. He doesn't understand any questions I ask." (C.R. at 14). On February 20, 2013, after conducting a psychiatric examination, the MHMRA Forensic

3

Unit reported that Mr. Fletcher was being medicated and needed fourteen (14) days to stabilize. (C.R. at 11). On April 17, 2013, Ms. Sulla requested a competency evaluation alleging that the "client cannot communicate appropriately...he has random jumbled thoughts ...wants to be referred to as property and not a person." (C.R. at 16). The competency evaluation conducted by Dr. Stephen McCary indicated that Mr. Fletcher "declined to participate in [the] evaluation." (C.R. at 22). However, he spoke with a detention officer at the Harris County Jail who observed that Mr. Fletcher "spent a lot of time in bed and he tended to stay to himself." (C.R. at 23). Dr. McCary concluded that Mr. Fletcher was competent to stand trial. (C.R. at 26).

On July 19, 2013, Ms. Sulla filed a Motion to Withdraw as Attorney of Record alleging that "[t]he defendant has filed a complaint with the state bar against the attorney as well as made inappropriate comments in a letter to the attorney of a personal nature." (C.R. at 32). The Motion to Withdraw was granted and Mr. Fletcher requested to proceed to trial *pro se*. (C.R. at 33-34). On July 23, 2013, the trial court conducted a hearing pursuant to *Feretta v. California*, 422 U.S. 806 (1975). At the *Feretta* hearing, Mr. Fletcher informed the court that his name was not "Melvin Fletcher," but "Melvin Fletcher Al of Moores Nation." (Supp. R. R. at 3). He claimed to be a "[d]irect descendant of ancient Moabites."

Mr. Fletcher informed the court that he is thirty-seven (37) years old and reads English. Although he had never been diagnosed with any learning disabilities, the highest grade he completed in school was the eleventh grade. (Supp. R. R. at 4-5). Mr.

4

Fletcher indicated that he had no formal legal education and he had never represented himself before in court. Mr. Fletcher requested that the trial judge provide for the record his "oath of office and declaration of authority order," but the trial court declined that request.

Mr. Fletcher first indicated that he was not familiar with the Texas Penal Code and when asked a second time if he understood what he was charged with responded that "the officers have no amenity when they violated the constitutional right." Mr. Fletcher then responded to a second inquiry by the trial court that he was familiar with the Texas Penal Code and the charges against him. (Supp. R.R. at 6-8). Mr. Fletcher requested "stand-by" counsel and the trial court agreed to appoint someone, but there is no indication in the record that Mr. Fletcher was appointed stand-by counsel in this case. The trial court agreed to allow Mr. Fletcher to proceed to trial *pro se* to which Mr. Fletcher responded: "Yeah. I speak for myself. I'm not a fiction. I speak for myself." (Supp. R.R. at 9-13).

On September 20, 2013, Mr. Fletcher filed a pre-trial motion titled "Legal Notice Name Declaration Correction and Publication." Among other things, in the motion, Mr. Fletcher argues:

> [h]aving lawfully and legally obtained and proclaimed my Moorish Nationality and Birthright 'Name and Title' in harmony with, in association with and in accord with Divine Law, the Customs; and the Laws, Rules, and usages of the Moorish Divine and National Movement; being aboriginal and Indigenous, and bound to the North American Continent by Heritage or Primogeniture; by Birthright; Natural Birth; by freehold; and by Inheritance Declared for the Public

5

Record, I am returning the European cognomen and fictitious misnomer back to the colonial possessors of it's pedigree. (C.R. at 55-56).

Mr. Fletcher filed another pre-trial motion entitled "Judicial Notice and Proclamation to All Elected United States Republic Officials and Public Servants of Federal, State, City and Municipal Governments, personnel and Corporate Entities Concerning the Constitution and all Statutory and Civil Law Codes..." (C.R. 57). The motion explained the meaning of his proclaimed Moorish ancestry and cited the United States Supreme Court's opinion in *Dred Scott v. Sandford*, 60 U.S. 393 (1857), for the proposition that "negroes whether held in slavery or free were not included and were not intended to be included in the United States Rights Republic Jurisdiction." (C.R. at 58).

On October 11, 2013, Mr. Fletcher filed a "Motion to Dismiss Notice of Intent to Impose Penalties." In this motion he again claimed to be a "Noble of the Moors Nation" the "true Aboriginal inhabitants of the Americas." As a result of his proclaimed ancestry, Mr. Fletcher argued that he is immune from "taxation and From Criminal and Civil Jurisdiction by and of the U.S.A..." He further asserted that the "Corporate United States is a foreign Corporation of which I am not under contract with." (C.R. at 75-76).

On October 22, 2013, a second Motion for Psychiatric Examination: Competency was filed. (C.R. at 80-81). On December 17, 2013, Dr. McCary evaluated Mr. Fletcher again for competency to stand trial and, again, Mr. Fletcher declined to

6

participate in the evaluation. "He was irritated and he was resistive. He also shook his legs in a nervous manner." Mr. Fletcher explained to Dr. McCary that he believed the judge was surprised by his effective defense and was "stalling" by ordering the competency evaluation. (Supp. C.R. at 3). Based on the same information that he had relied on in the previous competency evaluation, Dr. McCary found Mr. Fletcher competent to stand trial. (Supp. C.R. at 3-8).

On February 10, 2014, trial commenced. Prior to voir dire, Mr. Fletcher explained to the trial court that he is not "Melvin Eugene Fletcher" and that "Melvin Fletcher is a fiction created by the corporate state of Illinois." He again claimed his Moorish ancestry and argued that he was "being subjugated to an alias subjugation." Referencing the Decolonization Resolution of 1514, Mr. Fletcher argued that the State could not "hold judgment" on him. (2 R.R. at 3). The trial court explained to Mr. Fletcher that for purposes of these proceedings, he was "Melvin Fletcher." Mr. Fletcher responded that in holding him to that identity, the trial court was "violating Article 15 of the United Nations Declaration of Human Rights, which entitles everyone to a nationality." Mr. Fletcher recognized that he was representing "the defendant" in this case, but he did not "consent to a trial." (2 R.R. at 4-5).

Mr. Fletcher demanded to see the trial court's oath of office and argued that failure to produce the oath would constitute impersonating a public official. He claimed that the court was "operating a democratic political format which is contrary to Article IV, Section 4 of the United States Constitution, which guarantees every government or

7

public form of government." Mr. Fletcher refused to consent to a trial under Article III claiming "unconstitutional jurisdiction" of the trial court. The trial court continued to inquire as to whether Mr. Fletcher was ready to go to trial and Mr. Fletcher continued to challenge the trial court's jurisdiction. Finally, Mr. Fletcher conceded that "[if] you're going to force me to go to trial, I guess I have no other out then." (2 R.R. at 6-9).

The trial court read the indictment and asked for Mr. Fletcher to enter a plea of guilty or not guilty. Mr. Fletcher responded that there was "definitely a conflict of identity here." The court entered a plea of not guilty on behalf of Mr. Fletcher. When asked to make an election as to punishment, Mr. Fletcher responded that he did not "consent to any claims that are devoid of any true identity personages." The trial court explained to Mr. Fletcher that if he did not make an election as to punishment, punishment would be assessed by the court. Mr. Fletcher responded that "[p]art two, Article 8 of the rights of indigenous people, I have a right to collective and individual effort to maintain and develop my unique identity, including the right to identify myself as indigenous and to be recognized as such..." (2 R.R. at 10-11).

When the panel was seated, the trial court explained that Mr. Fletcher had elected to represent himself in this case and that a psychologist had evaluated him for competency to stand trial and found him to be competent. (2 R.R. at 18-19). At the conclusion of the State's voir dire of the panel, Mr. Fletcher proceeded as follows:

> First of all, let me clarify that I am not Melvin Fletcher. First of all, the Stewert [ph] case, via Act 1966 states that we were all born dead. I know it sounds crazy, but it's true. Dead at birth, cast beyond the sea, lost at sea. Okay. Three, United

8

States 57 states that all governments are corporations in as much as all governments are artificial people. The government can only deal with artificial people, figments of the imagination, having no—I'm not quoting that right. But I will get it. Hang on one second. I only have 20 minutes. Okay.

Before we get to that, let me say this. It says that jurisdiction can be challenged at any time. And jurisdiction once challenged cannot be assumed. It must be decided. This is Basso vs. Utah Power and Light Company, 494 F.2d, 906, 910. So, this is a formal challenge of territorial jurisdiction.

On June 6, 1848, the Supreme Court decision read by Judge Theo H. McCaleb declared that the United States does not own land of the ancient ones Uaxashaktun Mound Builders of North America, more than one million square miles of land. Also, that the Court declared that the lawful landowners are the heirs of henry Turner, Washitaw Moors. This is case No. 191, United States Supreme Court, United States vs. Heirs of Henry Turner. Now, anyone that just rolled by the South Texas Law center could understand what this is being said.

. . .

(2 R.R. at 68-69).

The State objected that Mr. Fletcher was discussing matters "outside the proceedings of void dire" and the trial court sustained the objection. Nonetheless, Mr. Fletcher continued:

So, what this is, this is likened to coercion. You see what I'm saying. They're operating a democratic political format, which is private contemporary corporation. They're no constitutionally sanctioned. It is contrary to Article Iv, Section 4, which guarantees the government, every state, republican form of government- United States has no jurisdiction except for those that contract with it. Congressional Act 1871 U.S.C., Title 28, Chapter 176 subchapter 176, subsection A, 2002. United States means a federal corporation. I am not under contract with the United States. Pursuant to in re Marion's Estates [ph], 36 New York, 479 affirmed United States v. Perkins, 163 U.S. 625, which states that Moors can be United States citizens because the Moroccan Empire has a business arrangement with the British Empire. European corporate contract citizens, Caucasian men. United States is a foreign corporation conducting trade and commerce in a foreign language. Okay.

...

If you look on your birth certificate you won't see a nationality on it. Okay. I cannot – every flesh and blood human being has a nationality. I cannot be Melvin Fletcher. Melvin fletcher is black. That is a term given by slaveholders to slaves in 1779. Okay. No websters – and associated the black, Moors, are placed in the customary term, niger, negro, colored or black. Okay. Mid-century dictionary of the English language, 1927.

So, once they have stripped me of my nationality and placed me under this instrument called a negotiable instrument, once they took me out of my nationality and placed the name my parents gave me on this instrument, what it did, it made me part of – it incorporated me. This was surreptitiously done without my consent. There you go, sir.

(2 R.R. at 71-73).

A venire person inquired as to whether Mr. Fletcher believed in the laws of government to which Mr. Fletcher responded that he did not "have to be subject to an alien jurisdiction." (2 R.R. at 75). Another venire person asked Mr. Fletcher if he believed a "non-citizen" was outside the law. Mr. Fletcher responded that "[t]hrough freehold inheritance, as an heir to an estate, I don't have to be subjugated to an alien, alien subjugation that's spoken of here in the decolonization resolution, convinced that the continued existence of colonialism prevents the development of international economic cooperation impedes the social, cultural, economic development of dependent peoples and militates against the united nations ideals of universal peace." (2 R.R. at 77).

The trial court reiterated to the panel that a hearing had been conducted that resulted in a judicial determination that Mr. Fletcher could proceed to trial *pro se*. A

10

venire person, expressing doubt about that decision, asked the trial court what judge made that decision. The trial court again explained to the panel that Mr. Fletcher had been found competent to proceed to trial to which a venire person, expressing doubt about that determination, stated that he would "like to know the name of the psychologist" and "does he know the definition of competent?" (2 R.R. at 81-82). The trial court proceeded to ask a doctor on the panel: "what is a malinger?" The doctor responded that "[i]t is a person who feigns illness for some sort of gain." The trial court questioned the panel if "anybody thought maybe that could be a possibility?" (2 R.R. at 83). Mr. Fletcher refused to exercise any strikes and instead requested a "jury of my national peers, active Moors." After the jury was seated, Mr. Fletcher again demanded to see the trial court's oath of office. (2 R.R. at 96-97).

Mr. Fletcher was found guilty by the jury. On February 12, 2014, the punishment phase of the trial commenced. When asked if he would plead true or not true to the enhancement paragraphs, Mr. Fletcher did not enter a plea, but rather proceeded to "refute the Union states the color of wardship name of artificial construct of Melvin Fletcher" and once again attempted to "assume [his] national name Melvin Fletcher Forecolon El Amacorwick." (4 R.R. at 6). Mr. Fletcher again argued that "want of jurisdiction may not be cured by consent of parties." (4 R.R. at 7). The State called a fingerprint expert to prove up the enhancements and Mr. Fletcher objected that "[t]his court deviated from law in disregarding my ex-relation claim which is my legal remedy to keep you from using any artificial construct against me. No federal, state, or local

government can deny who I claim to be. I'm an aboriginal Indigenous Moor...." (4 R.R. at 7-11).

Mr. Fletcher's argument at punishment was as follows:

Once again, I am not under contract of the United States. Pursuant to In re Merrian's Estate, 36 N.Y. 479. Affirmed in United States v. Perkins, 163. United States, 625, states that Moors cannot be citizens of the United States. Contract Moroccans have with the –excuse me. One second, please.

. . .

Under the current Uniform Commercial Code, this makes all crimes commercial by contract per 27 CFR 72.11, Part 72: Disposition of seized personal property. Table of contents, Subpart B, defines Commercial Crimes. Any of the following type of crimes, federal or state, offenses against the revenue laws: burglary, counterfeiting, forgery, kidnapping, larceny, robbery –

. . .

(4 R.R. at 14-15).

The trial court found the enhancement paragraphs to be true and sentenced Mr. Fletcher to seven (7) years in the Institutional division of the Texas Department of Criminal Justice. (4 R.R. at 15; C.R. at 141-142). Mr. Fletcher gave timely Notice of Appeal on February 19, 2014. (C.R. at 148).

> **GROUND ONE: Did the Panel err in determining that the trial court's questions and admonitions ensured that Mr. Fletcher's waiver of counsel was competent, knowing, intelligent, and voluntary as required by *Faretta v. California*, 422 U.S. 806 (1975)?**

## ARGUMENT

Under the Sixth and Fourteenth Amendments to the United States Constitution, a defendant may not be convicted in state court without being afforded his fundamental right to counsel. U.S. Const. Amend. VI; U.S. Const. Amend. XIV; *Gideon v. Wainwright*, 372 U.S. 335, 343-44 (1963). Yet the right to counsel includes the reciprocal right to

12

self-representation. *Faretta v. California*, 422 U.S. 806, 818 (1975). Thus, the defendant may waive his right to counsel and choose to represent himself, but "[c]ourts indulge every reasonable presumption against waiver of fundamental constitutional rights" and "do not presume acquiescence in the loss of fundamental rights." *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938). Moreover, a "heavy burden rests upon the prosecution to demonstrate an intelligent, voluntary and knowing waiver of constitutional rights, particularly as applied to the right to retained or appointed counsel." *Trevino v. State*, 555 S.W.2d 750, 751 (Tex. Crim. App. 1977). This court must indulge "every reasonable presumption against the validity of such a waiver." *Jordan v. State*, 571 S.W.2d 883, 884 (Tex. Crim. App. 1978); *Geeslin v. State*, 600 S.W.2d 309, 313 (Tex. Crim. App. 1980); *Zerbst*, 304 U.S. at 464.

After a defendant seeks to waive his right to counsel and unequivocally asserts his right to self-representation, the trial judge must conduct a "penetrating and comprehensive examination of all the circumstances," *Von Moltke v. Gillies*, 332 U.S. 708, 724 (1948), to ensure that the defendant "knows what he is doing and his choice is made with eyes open." *Faretta*, 422 U.S. at 835 (quoting *Adams v. United States ex rel. McCann*, 317 U.S. 269, 279 (1942)). The judge "must investigate as long and as thoroughly as the circumstances of the case before him demand," *Von Moltke*, 332 U.S. at 723-24, to determine whether the defendant voluntarily, competently, knowingly and intelligently waives his right to counsel. *Faretta*, 422 U.S. at 835; *Von Moltke*, 332 U.S. at 723; *Collier v. State*, 959 S.W.2d 621, 625 (Tex. Crim. App. 1997). This inquiry entails

13

certain admonishments designed to apprise the defendant of the "dangers and disadvantages of self-representation." *Faretta*, 422 U.S. at 835; See Tex. Code Crim. Pro. 1.051(g).

The Fourteenth Court of Appeals Opinion did not find the evidence legally sufficient to support a finding of knowing and intelligent waiver,[1] but found that the record supported a knowing and intelligent waiver of counsel because:

> The judge inquire into his age, background, experience, and education. *Cudjo*, 345 S.W.3d at 184. Appellant was informed that he would have to abide by the formal rules of evidence and procedure and that he would not be afforded special treatment. *Id.* The trial court explained the charge against appellant and the possible range of punishment, and it informed appellant that his decision to waive counsel was poor and that it was likely the worst decision he would make in his entire life. *See Collier*, 959 S.W.2d at 626 (finding valid waiver after noting similar admonishments and stating "the trial court tried repeatedly to impress upon appellant the extreme gravity of his request to proceed prose and the likelihood that it was a serious mistake"). Appellant was thus informed of the dangers of self-representation, and he conceded that he was aware of the dangers during the hearing. Moreover, nothing in the record indicates that appellant's waiver was coerced and therefore involuntary.

> . . .

> Appellant's misunderstanding of the law is not dispositive of his competency to waive counsel, as the competence required of a defendant seeking to waive his right to assistance of counsel is the competence to waive the right, not the competence to represent himself. *Prather*, 238 S.W.3d at 403 (citing *Godinez*, 509 U.S. at 399); see also *Faretta*, 422 U.S. at 836 ("We need make no assessment of how well or poorly *Faretta* had mastered the intricacies of the hearsay rule and the California code provisions that govern challenges of potential jurors on voir

---

[1] In a footnote of the opinion, the Fourteenth Court of Appeals determined that "Appellant poses this issue as a challenge to the sufficiency of the evidence to find his waiver was knowing, intelligently, and voluntarily made. In *Collier v. State*, 959 S.W.2d 621, 625 (Tex. Crim. App. 1997), the Court of Criminal Appeals was presented with a case in which the defendant seemingly challenged waiver of his counsel on legal sufficiency grounds. The Court did not, however, examine the issue under the legal sufficiency standard of review. Instead, the Court examined whether the waiver was knowing, intelligent, and voluntary. We follow *Collier*'s approach in this case."

dire. For his technical legal knowledge, as such, was not relevant to an assessment of his knowing exercise of the right to defend himself.") The judge was thus not required to inquire further into appellant's competency merely because appellant raised his invalid defense during the hearing.

*Fletcher v. State*, ---S.W.3d---, No. 14-14-00177-CR, 2015 WL 4984532, at 11-13 (Tex. App. –Houston [14th Dist.] Aug. 20, 2015, pet. Pending). Although it is accurate that the trial court admonished Mr. Fletcher, this record is replete with evidence that further inquiry into Mr. Fletchers knowing and intelligent waiver of his right to counsel was required. For instance, in *Williams v. State*, 925 S.W.2d 272, 274 (Tex. App. –Corpus Christi, 1996, no pet.), the following conversation took place on the record between the trial court and the defendant:

> Court: Mr. Williams, when you were here on the ninth I gave you this admonishment of the right to counsel and waiver. Did you read this?
>
> Mr. Williams: Yes.
>
> Court: And after reading it did you sign it?
>
> Williams: Yes.
>
> Court: And do you understand the dangers of representing yourself in this matter?
>
> Williams: Yes.
>
> Court: I just want to make sure that you do understand because once this begins I will not be able to assist you. You'll be required to follow the same rules of procedure and the same rules of evidence that the State is required to follow. You'll be held to the same standards as far as presentation of evidence and argument and everything else. And being that you have no legal training this is going to put you at a severe disadvantage and I want to make sure you understand that.

15

Williams: Yes.

Court: Okay. Then we'll go ahead and begin ....

*Id.* In deciding to reverse and remand the case, the Thirteenth Court of Appeals held that "this conversation had nothing to do with whether the appellant maintained the ability to make a knowing and intelligent waiver. All the appellant had stated in his answers to the trial judge's questions is that he understood the dangers of self-representation. It is not possible from this exchange alone to determine whether the appellant had the intelligence or capacity to fully understand the consequences of the waiver. Understanding the disadvantages of self-representation and being able to appreciate the consequences of waiving counsel are completely different." *Id.* at 275.

Here, the Fourteenth Court of Appeals held that a record that demonstrates proper admonishments by its very nature also demonstrates a knowing and intelligent waiver. The trial court completely failed to ascertain whether Mr. Fletcher's verbal expressions of waiver were being made intelligently and knowingly. In fact, the record demonstrates that Mr. Fletcher's waiver was anything but knowing and intelligent because it was based on the completely false premise that he would be able to challenge the jurisdiction of the State and of the trial court based on his proposed national origin. Mr. Fletcher's personal assessment regarding his status and available defenses was so clearly and fatally flawed as to constitute an unintelligent and unknowing waiver.

The trial court literally mocked, not only Mr. Fletcher, but this system we call justice when it indulged Mr. Fletcher's fantasy about nationality in order to conclude

16

that Mr. Fletcher's waiver complied with the requirements of *Faretta*. When Mr. Fletcher informed the trial court at the *Faretta* hearing that he was not Melvin Fletcher, but "Melvin Fletcher Al of Moores Nation" the trial court responded "All right. Good." When Mr. Fletcher explained further to the court that "the officers have no amenity when they violated the constitutional right" the trial court responded "[y]eah, I got all that. And I'll be glad to show you my authority papers. Send them to you in a heartbeat, but let's finish one thing at a time…" The trial court than made the unfulfilled promise of assigning requested stand-by counsel before allowing Mr. Fletcher to proceed *pro se*. (Vol. 1 Supp. Rec. at 3-9).

The trial court completely failed to conduct the inquiry required under *Faretta* and its progeny in order to properly determine whether Mr. Fletcher fully appreciated the consequences of the waiver in light of his delusional beliefs about basic matters of jurisdiction and identity of the parties. *Faretta* provided that "the trial judge may terminate self-representation by a defendant who deliberately engages in serious and obstructionist misconduct" and that "[t]he right of self-representation is not a license to abuse the dignity of the courtroom." *Faretta*, 422 U.S. 834 n. 46. The court indulged Mr. Fletcher and did nothing by way of exploration into Mr. Fletchers knowing and intelligent waiver despite his delusional answers. The trial court learned that Mr. Fletcher thought he was about thirty-six or thirty-seven years old, he could read and write English, and despite never having been diagnosed with any learning disabilities dropped out of school in the eleventh grade. This was the only inquiry

17

throughout the process were the trial court sought to discover anything about Mr. Fletcher. This brief inquiry seems meaningless considering the answers given sufficed to establish for the court that Mr. Fletcher was capable of a knowing and intelligent waiver under the circumstances.

The right to counsel at trial is a fundamental right. *Williams v. State*, 252 S.W,3d 353, 356 (Tex. Crim. App. 2008). The courts must indulge every reasonable presumption against waiver of the right to counsel. *Id.* The Prosecution has a heavy burden to demonstrate that a waiver of the right to counsel was made intelligently, knowingly, and voluntarily. *Geeslin v. State*, 600 S.W.2d 309, 313 (Tex. Crim. App. [Panel Op.] 1980). The asking of standard questions in the face of a completely delusional perception of the justice system cannot meet this heavy burden. The record here does not demonstrate that Mr. Fletcher understands the consequences of his waiver because his "understanding" of the system is so flawed as to be delusional and cannot form the basis of a knowing and intelligent decision. A respect for the individual defendant compels courts to recognize when a defendant is committing "suicide by court" and to prevent this self-destructive behavior. If ever there was a trial that was rendered fundamentally unfair and unreliable based on an invalid waiver of counsel and the "serious and obstructionist misconduct" of the *pro se* litigant, this is that trial. *Faretta*, 422 U.S. 834 n. 46.

**GROUND TWO: Did the Panel err in determining that the trial court did not abuse its discretion by allowing Mr. Fletcher to conduct his own defense at trial?**

Both the 6th Amendment to the United States Constitution and Article I, § 10 of the Texas Constitution guarantee a defendant in a criminal trial the right to assistance of counsel. This constitutional guarantee can be waived and the United States Supreme Court set out the requirements for a valid waiver in *Faretta v. California*, 422 U.S. 806 (1975). However, in *Indiana v. Edwards*, 554 U.S. 164, 177 (2008), the Court held:

> We consequently conclude that the Constitution permits judges to take realistic account of the particular defendant's mental capacities y asking whether a defendant who seeks to conduct his own defense at trial is mentally competent to do so. That is to say, the Constitution permits States to insist upon representation by counsel for those competent enough to stand trial under Dusky but who still suffer from severe mental illness to the point where they are not competent to conduct trial proceedings by themselves.

In other words, competency to stand trial no longer automatically equals competency to represent oneself in trial. Here, the panel held that the trial court was "not constitutionally required to conduct further inquiry regarding appellant's competence to conduct his own defense once Dr. McCary found him competent to stand trial." *See Fletcher v. State*, 17-18.

The Fourteenth Court of Appeals opinion in this case implies the finding of fact that the trial court actually made a ruling that Mr. Fletcher was competent to represent himself. The trial court made no such holding and the record is clear that the trial court and the State proceeded on the false assumption that competency to stand trial equates to competency to represent oneself. The panel opinion implied a finding of fact upon

19

the trial court when the trial court never considered the separate standard established by *Edwards*.

In its analysis of the problems associated with self-representation and mental illness, the Supreme Court cited motions written by Mr. Edwards as evidence that he was incompetent to represent himself. Here, the panel opinion mentions facts that allegedly support the trial court's "ruling" but totally ignores the vast majority of the trial record, including the multiple motions filed by Mr. Fletcher, that contradict it. The panel opinion refers to examples of Mr. Fletcher's conduct during trial to retroactively justify the trial court's decision to allow him to represent himself. Despite his rambling motions and delusional ideas about jurisdiction that go virtually unaddressed, the panel found that because he cross-examined three of the state's four witnesses and made illusions to the sufficiency of the evidence in his closing argument he was able to "carry out the basic tasks needed to present his own defense without the help of counsel" as required by *Edwards*. 554 U.S. at 175-176.

Mr. Fletcher acknowledges that "the standard for waiving the right to counsel is no higher than that of competency to stand trial." *Chadwick v. State*, 309 S.W.3d 558, 560 (Tex. Crim. App. 2010), and the fact intensive competency determination on self-representation is subject to the trial court's discretion. However, the right to counsel and competency to conduct one's own defense present two separate questions, *Godinez v. Moran*, 509 U.S. 389 (1993), and an appellate court maintains the power to overturn the trial court's competency determination if the "ruling was so clearly wrong as to lie

20

outside the zone within which reasonable people might disagree." *Taylor v. State*, 268 S.W.3d 571, 579 (Tex. Crim. App. 2008). In addition, the judiciary has an independent interest in ensuring that criminal trials appear fair to all who observe them. *Wheat v. United States*, 486 U.S. 153 (1988).

The *Edwards* competency determination serves as a procedural safeguard allowing the trial judge to ensure due process, the structural integrity of trial, and the dignity of the defendant and the proceedings. *Edwards*, 554 U.S. at 177. Blind adherence to the letter of *Faretta* undermines both the dignity and fairness underpinning the right to self-representation when mental illness comes into play. *Id.* "No trial can be fair that leaves the defense to a man who is insane, unaided by counsel, and who by reason of his mental condition stands helpless and alone before the court." *Massey v. Moore*, 348 U.S. 105, 108 (1954).

Here, the record is replete with stark evidence that Mr. Fletcher was not competent to represent himself at trial and trial court was aware that the behavior likely stemmed from Mr. Fletcher's mental illness. Although Dr. McCary found Mr. Fletcher competent to stand trial, he never assessed his competency to represent himself and there is ample evidence to suggest that Mr. Fletcher should not have been allowed to represent himself. Allowing a defendant to proceed on such misguided and bizarre contentions serves neither the individual defendant nor society. Mr. Fletcher hardly represented himself in this case; he effectively waived his right to a defense at all. The panel opinion erred in failing to determine that the trial court abused its discretion in

21

failing to save Mr. Fletcher from himself and permitting him to represent himself when there is ample evidence to support a decision to the contrary and the panel failed to consider that evidence.

Refusing to allow defendants to proceed pro se based on misguided and bizarre contentions serves the interest of justice by reaching more consistent results between defendants charged with similar offenses, fulfilling the defendants' right to counsel when they seek to waive it for the sole purpose of presenting a frivolous "defense," and increasing judicial economy. On the thin line between the right to counsel and the right not to have counsel, courts should err on the side of providing counsel, especially when defendants want to proceed *pro se* solely to advance delusional theories that no reasonable mind would contemplate.

## PRAYER

For the reasons stated above, Mr. Fletcher prays that the Court will grant this Petition for Discretionary Review and that the case be set for submission to the Court on oral argument. Mr. Fletcher further prays that, after submission, this Court will reverse the decision of the Fourteenth Court of Appeals, and order the cause reversed and remanded for a new trial.

Respectfully submitted,

**ALEXANDER BUNIN**
Chief Public Defender
Harris County Texas


*/s/ Daucie Schindler*
**Daucie Schindler**
Assistant Public Defender
Harris County Texas
1201 Franklin, 13th Floor
Houston Texas 77002
(713) 368-0016
(713) 368-9247 fax
TBA No. 24013495
daucie.schindler@pdo.hctx.net

## CERTIFICATE OF COMPLIANCE

I certify that this document complies with Tex. R. App. Proc. 9. It was prepared on a computer using 14-point Garamond type. It contains 6,244 words.

_/s/ Daucie Schindler_
**DAUCIE SCHINDLER**
Assistant Public Defender

## CERTIFICATE OF SERVICE

I certify that I electronically served a copy of this brief on the Appellate Division of the Harris County District Attorney's Office and also on Lisa McMinn, State Prosecuting Attorney, on October 21, 2015.

*/s/ Daucie Schindler*
**DAUCIE SCHINDLER**

Assistant Public Defender

APPENDIX A



In The

# Fourteenth Court of Appeals

## NO. 14-14-00177-CR

## MELVIN EUGENE FLETCHER, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 185th District Court**
**Harris County, Texas**
**Trial Court Cause No. 1376099**

## O P I N I O N

Appellant Melvin Eugene Fletcher was charged with felony theft of metal after a police officer witnessed him taking copper from a business. At a hearing before trial, appellant waived his right to counsel. He was subsequently convicted and sentenced to seven years in prison. Appellant raises two issues on appeal.

In his first issue, appellant argues that his waiver of his right to counsel was ineffective because the trial court failed to inform him of the possible defenses and mitigating circumstances and because the trial court did not conduct further inquiry into

his competency after he raised an invalid defensive theory. We conclude that the trial court's questions and admonitions ensured that appellant's waiver was competent, knowing, intelligent, and voluntary.

In his second issue, appellant argues the trial court abused its discretion by finding him competent to conduct his own defense at trial. Appellant asserts that a constitutional mental-illness limitation on the right of self-representation required the trial court to insist that he proceed with the assistance of counsel. We conclude that no inquiry beyond appellant's competence to stand trial was constitutionally required, but in any event there is evidence to support an implied finding that appellant was also competent to conduct his own defense. We therefore affirm.

## BACKGROUND

While working a second job for Electric Power Design, Officer Rudy Deleon of the Houston Police Department saw appellant steal copper from the business. Appellant was indicted for felony theft of metal. Attorney Jamie Sulla was appointed to represent appellant.

Subsequently, the presiding judge ordered a psychiatric examination of appellant. As evidence, the judge cited the following statement, presumably from Sulla: "client cannot communicate with me. He doesn't understand any questions I ask." The resulting report indicated that appellant was receiving medication and required fourteen days to stabilize. Approximately two months later, Sulla filed a motion requesting a psychiatric evaluation for competency. Sulla stated the following reason for the request: "[T]he client cannot communicate appropriately with [me.] [H]e has random[,] jumbled thoughts[.] [He] wants to be referred to as property and not a person." The trial court granted the motion and issued an order directing the Harris County Forensic Services to determine whether appellant was competent to stand trial.

Dr. Stephen McCary, a psychologist licensed by the Texas State Board of

Examiners of Psychologists, conducted the examination. McCary's report reveals that appellant did not participate in the competency evaluation. Appellant suggested that McCary instead use records and other jail sources to gather information.

McCary spoke with several detention officers. Officer Henley conceded that he had "very limited information" to provide but stated that he had encountered "no problems in dealing with [appellant]." Officer Ballard stated that appellant "did not demonstrate any bizarre or unusual behaviors." Appellant "interacted with the other inmates[.] He played games such as chess, he wrote or read letters, and he watched television." Ballard stated appellant could follow "basic instructions if he chose to do so." Appellant did, however, make "inappropriate, rude sexual comments to female staff." Officer Gladney informed McCary that appellant "spent a lot of time in bed" and "tended to stay to himself." Appellant "interacted with other inmates a few times." Appellant followed instructions and "exhibited ordinary inmate behavior." He did not demonstrate "any inappropriate or unusual behaviors."

McCary also examined appellant's jail medical records, which indicated that appellant was taking medication to control a seizure disorder. McCary noted appellant had been prescribed an anti-depressant drug and an anti-anxiety drug. Appellant's records also indicated appellant had a history of marijuana and alcohol abuse. McCary concluded the report by stating that jail medical records indicated appellant had exhibited the following behaviors within the past three months:

> feedback from psych techs reveal Patient to be in no acute distress and interacting with others and watching TV; reported by staff as eating well and sleeping well; appeared anxious, barely making eye contact, acting as if internally distracted, uncooperative with exam; volunteered without asking "I was molested as a child"; claiming he is paranoid and hearing voices and seeing shadows; not on anti-psychotics, thought process was goal-directed; no evidence of bizarre statements or looseness; he is laughing and talking with other inmates; Patient was closely observed during his admission to inpatient unit and not observed to have signs of psychotic disorder; at one point he became angry and asked "why am I

3

here"; the necessity of good communication with lawyer was reviewed and the consequences of malingering were briefly discussed; Patient terminated the interview abruptly and walked out of the room . . . .

McCary diagnosed appellant with anxiety disorder, cannabis abuse or dependence, alcohol abuse or dependence, antisocial personality disorder, and malingering. He stated that appellant demonstrated signs of mental illness but concluded appellant's mental illness impaired him only to a "mild degree." McCary found appellant competent to stand trial.

Approximately six weeks later, appellant filed a handwritten motion purportedly waiving his right to counsel and requesting to proceed pro se.[1] Nine days later, Sulla filed a motion to withdraw as attorney because appellant filed a complaint with the state bar against her and "made inappropriate comments . . . of a personal nature" in a letter. The trial court granted Sulla's motion to withdraw. The court conducted a hearing pursuant to defendant's request to waive counsel and proceed to trial pro se. At the conclusion of the hearing, the trial court granted appellant's request.

Because they are relevant to appellant's issues on appeal, we discuss several of the pretrial motions filed by appellant after the trial court granted his request to proceed pro se. Almost two months after his request was granted, appellant filed a two-page handwritten motion entitled "Legal Notice Name Declaration Correction and Publication." The motion begins:

> I Melvin Fletcher Al, being duly affirmed, standing squarely, Declare and Proclaim upon Divine Law; Nature's Law; Universal Law; Moorish Birthrights; International Law; and Constitutional Law; Declare and say: I, being previously Identified by the Union States Society of North America – U.S.A. under the colorable, word-ship name Melvin Fletcher, do hereby refute the fraud; make Public and Publish my Corrected National Name; Declare and Affirm my true Proper Person Status; and reclaim my rightful

---

[1] The document is titled "Faretta Warnings Waiver Of Court Appointed Counsel Court Findings And Order Allowing Defendant To Proceed Pro Se."

4

Social and Cultural Life of the State . . . .

The motion continues along these lines.

The same day, appellant filed another handwritten motion entitled "Judicial Notice and Proclamation To All Elected United States Republic Officials and Public Servants of Federal, State, City and Municipal Governments, Personnel and Corporate Entities Concerning the Constitution and all Statutory and Civil Law Codes of the Lant [sic] etc. know All Men by These Presents: Disclaimer." In the motion, appellant asserts that he is "a Noble of the Al Moroccan Empire (North America)" and appears to argue that the United States has no jurisdiction over him. The motion cites the United States Supreme Court's opinion in *Dred Scott v. Sandford*, 60 U.S. 393 (1856), for the proposition that African Americans "whether held in slavery or free were not included and were not intended to be included in the United States Rights Republic Jurisdiction."

Appellant also filed a motion entitled "Final Notice! Judicial Notice and Proclamation Motion to Dismiss – Notice of Intent to Impose Penalties." He reiterated his Moorish ancestry and argued that he "retain[ed] all substantive rights and Immunities from taxation and from Criminal and Civil Jurisdiction by and of the U.S.A."

The trial court issued an order granting a second motion for psychiatric examination. Dr. McCary once again examined appellant to determine whether he was competent to stand trial.[2] Appellant again declined to participate in the evaluation. McCary wrote appellant appeared

> irritated and he was resistive. He also shook his legs in a nervous manner. He commented that the Judge was surprised by an effective defense that he had developed regarding his case and he commented that this is why he was referred for a competency evaluation. He said that he believed that the Judge was "stalling" by ordering a competency evaluation for him. He

---

[2] In the interim, appellant filed two more motions reiterating the arguments raised in his prior motions. The motions were filed on November 20, 2013.

stated that he does not think that he has any problems that would warrant his undergoing a competency evaluation. (He asserted, "I've got all my faculties.")

McCary contacted Detention Officer Trater, who reported that appellant had not exhibited any bizarre or unusual behaviors. Appellant generally kept to himself, had not caused any problems, and did not interact with other inmates. McCary ruled out malingering as a possibility. He concluded that appellant's mental illness impaired him to a "mild (moderate) degree." Based on the new information from Trater and the prior information from the other detention officers, McCary deemed appellant competent to stand trial.

At trial, appellant appeared pro se before a different judge. The trial court opened the proceedings by announcing, "This is Cause No. 1376099, State of Texas vs. Melvin Eugene Fletcher." Appellant asserted, "No, sir. This Court cannot force an acquiescence upon me to an artificial construct. There's no statute of limitations on fraud and that's what the states are committing and surreptitiously incorporating me through – ." The court interrupted, asking: "You're not Melvin Eugene Fletcher?" Appellant responded:

> Melvin Fletcher is a fiction created by the corporate state of Illinois. He does not have a nationality. I have a nationality. I'm a Moors Aboriginal indigenous to northwest Amexem. I'm being subjugated to an alias subjugation. I'm not the same nation, jurisdiction, custom, or national peers. The State cannot hold judgment on me. This is all in the court, the Decolonization Resolution 1514, of which –

The trial court again interrupted appellant, stating that "For the purposes of the court today, you are Melvin Eugene Fletcher." Appellant and the trial court had an exchange in which appellant reiterated some of his jurisdictional arguments and demanded to see the trial court's "oath of office." The court denied appellant's demand and attempted to proceed, but appellant stated he did not consent to trial. After another series of exchanges, appellant finally stated: "If you're going to force me to go to trial, I guess I

6

have no other out then."

The trial court read the indictment and asked for appellant's plea. Appellant responded that "[t]here's definitely a conflict of identity here," and the trial court entered a plea of not guilty. When asked whether he wanted punishment assessed by a jury or the court, appellant stated that he did not "consent to any claims that are devoid of any true identity personages." The trial court explained to appellant that if he did not request that punishment be determined by the jury, the court would assess punishment. Appellant responded with his jurisdictional arguments. The court then stated that it would assess punishment. Appellant asked to submit four "writs" and asked the court to read the documents into the record. The court accepted the writs but denied the request to have the documents read into the record.

During voir dire, appellant repeated his jurisdictional arguments before the panel members. After initially allowing appellant to present his theory, the State objected on the grounds that appellant was discussing "matters outside the proceedings of voir dire." The court sustained the objection, but appellant nevertheless proceeded at some length until he was interrupted by a venire member. Appellant essentially used all of his time to discuss his jurisdictional argument before the panel. Once his time ended, the trial court told the panel members that a judge had previously found appellant able to represent himself. The court explained to the panel that appellant had been found competent to stand trial by a psychologist, to which a venire person responded that he would "like to know the name of the psychologist" and whether "he know[s] the definition of competent." Appellant did not exercise any strikes but instead requested a "jury of my national peers, active Moors." The jury was subsequently seated and the trial commenced.

Appellant briefly mentioned his nationality again at the beginning of the guilt-innocence phase and demanded to see the judge's oath of office. He also cross-examined three witnesses, posing questions related to the facts of the case. During his

7

closing argument, appellant did not raise his jurisdictional defensive theory but instead attacked the State's evidence. The jury found appellant guilty.

At the punishment phase, the trial court asked appellant if he would plead "true" or "not true" to the enhancement paragraphs. Appellant did not enter a plea but instead repeated his prior jurisdictional arguments. The State called a fingerprint expert to prove the enhancements and appellant objected to admission of the State's Exhibits 2 through 20, once again raising his jurisdictional defense. He reiterated his defense when the court asked if he would like to present any evidence. The trial court found the enhancement paragraphs true and sentenced appellant to seven years in prison. This appeal followed.

## ANALYSIS

### I. Appellant competently, knowingly, intelligently, and voluntarily waived his right to counsel.

In his first issue, appellant argues that he did not competently, knowingly, intelligently, and voluntarily waive his right to counsel.[3] Appellant asserts his waiver is invalid because the trial court failed to admonish him properly and failed to inquire about his competency to waive the right.

### A. Applicable law

The Sixth Amendment right of an accused in a criminal proceeding to effective assistance of counsel extends to the States through the Fourteenth Amendment. *Gideon v. Wainwright*, 372 U.S. 335, 342–44 (1963); *see* U.S. Const., amends. VI, XIV. The right to counsel may be waived if the defendant desires to represent himself. *Faretta v.*

---

[3] Appellant poses this issue as a challenge to the sufficiency of the evidence to find his waiver was knowingly, intelligently, and voluntarily made. In *Collier v. State*, 959 S.W.2d 621, 625 (Tex. Crim. App. 1997), the Court of Criminal Appeals was presented with a case in which the defendant seemingly challenged his waiver of counsel on legal sufficiency grounds. The Court did not, however, examine the issue under the legal sufficiency standard of review. Instead, the Court examined whether the waiver was knowing, intelligent, and voluntary. We follow *Collier*'s approach in this case.

*California*, 422 U.S. 806, 833–36 (1975) (recognizing a defendant's "constitutional right to conduct his own defense" that prevents a State from "compel[ling] [him] to accept a lawyer he does not want"). To be constitutionally effective, the waiver of counsel must be made (1) competently, (2) knowingly and intelligently, and (3) voluntarily. *Collier v. State*, 959 S.W.2d 621, 625 (Tex. Crim. App. 1997) (citing *Godinez v. Moran*, 509 U.S. 389, 400–401 (1993); *Faretta*, 422 U.S. at 834–836). The competence that is required of a defendant seeking to waive his right to assistance of counsel is the competence to waive the right, not the competence to represent himself. *Prather v. State*, 238 S.W.3d 399, 403 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd) (citing *Godinez*, 509 U.S. at 399). The decision to waive counsel and proceed pro se is made "knowingly and intelligently" if it is made with a full understanding of the right to counsel being abandoned, as well as the dangers and disadvantages of self-representation. *Faretta*, 422 U.S. at 835–36; *Cudjo v. State*, 345 S.W.3d 177, 184 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd). The decision is made "voluntarily" if it is uncoerced. *Godinez*, 509 U.S. at 401 n.12.

The record must contain proper admonishments concerning self-representation and inquiries of the defendant that allow the trial court to assess his knowing exercise of the right to defend himself. *Prather*, 238 S.W.3d at 403. If such factors are not otherwise apparent from the record, a trial court's inquiry regarding the accused's waiver of counsel should center on his background, age, experience, and education. *Cudjo*, 345 S.W.3d at 184 (citing *Johnson v. State*, 760 S.W.2d 277, 278 (Tex. Crim. App. 1988)). The accused should be aware there are technical rules of evidence and procedure and that he will not be granted any special consideration solely because he asserted his pro se rights. *Cudjo*, 345 S.W.3d at 184. The trial court, however, need not follow formulaic questioning or a particular script in ascertaining the knowing and voluntary nature of an accused's waiver of counsel, and a written waiver of the right to counsel is not required. *Id.*

9

## B.    The record supports the trial court's acceptance of appellant's waiver.

The trial court judge hearing appellant's motion to waive counsel and proceed to trial pro se informed appellant that he was charged with the state felony of theft of metals that was enhanced with two prior felonies. He told appellant that if convicted, he would face between two and ten years in prison, and a fine not to exceed $10,000. The court asked appellant if he understood the charges. Appellant initially answered by raising his jurisdictional arguments, but the trial court quickly focused appellant on the issues at hand. Appellant then told the court that he understood the charges and the range of sentencing. The court responded:

> I've been doing this job for 27 years now and 133,000 cases. I've had 10 people do what you're about to do. . . . They've all lost the case miserably. You're not going to win this thing. This is a very bad choice but a choice you're entitled to make if you choose to do so.

The court learned that appellant was thirty-seven years old, could read and write English, and had completed the eleventh grade in high school. Appellant told the court he had no learning disabilities or handicaps and that he had never been declared mentally incompetent. The court explained to appellant that he had a right to a court-appointed lawyer and that if he waived that right, he would likewise be waiving the appellate issue of ineffective assistance of counsel. Appellant was informed that he would be held to the same standard as a licensed attorney and would not receive special treatment. Appellant claimed that he was familiar with the Penal Code section charged, the Code of Criminal Procedure, and the Rules of Evidence. Appellant stated he was aware of the dangers of self-representation.[4] The court then allowed appellant to represent himself but cautioned that he thought "this is the worst decision . . . you'll ever make in your young life." Appellant signed a form indicating he received the

---

[4] Appellant asked for standby counsel, and the court granted the request during the hearing. No indication of standby counsel appears in the trial record, however. Any failure to provide standby counsel has not been raised as an issue in this appeal.

10

*Faretta* warnings. The judge gave appellant one last chance to change his mind, but appellant reiterated his desire to represent himself.

Based on this record, we cannot say that appellant's decision to proceed pro se was anything less than knowing and intelligent. The judge inquired into his age, background, experience, and education. *Cudjo*, 345 S.W.3d at 184. Appellant was informed that he would have to abide by the formal rules of evidence and procedure and that he would not be afforded special treatment. *Id.* The trial court explained the charge against appellant and the possible range of punishment, and it informed appellant that his decision to waive counsel was poor and that it was likely the worst decision he would make in his entire life. *See Collier*, 959 S.W.2d at 626 (finding valid waiver after noting similar admonishments and stating "the trial court tried repeatedly to impress upon appellant the extreme gravity of his request to proceed pro se and the likelihood that it was a serious mistake"). Appellant was thus informed of the dangers of self-representation, and he conceded that he was aware of the dangers during the hearing. Moreover, nothing in the record indicates that appellant's waiver was coerced and therefore involuntary.

Appellant argues his waiver was nevertheless ineffective. He asserts that the judge was required to conduct further inquiry into his competency because he raised invalid jurisdictional arguments during the *Faretta* hearing, he was receiving medication to treat anxiety and depression at the time, and his original trial counsel had requested a competency evaluation. According to appellant, *Blankenship v. State*, 673 S.W.2d 578 (Tex. Crim. App. 1984), required the trial court to further apprise itself of his mental state in assessing his competence to waive counsel.

During the *Faretta* hearing, appellant was generally responsive to the questions posed. The judge asked appellant whether he had ever been deemed incompetent, and appellant responded that he had not. Indeed, appellant had been found competent to stand trial. Appellant complains that McCary made the competency determination

11

largely without speaking to him, but McCary attempted to speak to appellant and appellant refused. We decline to hold that criminal defendants can obtain a new trial by refusing to participate in competency evaluations before trial and then arguing on appeal that the competency evaluation was defective due to their non-participation.[5] Moreover, McCary spoke with several detention officers and reviewed appellant's medical records, which revealed that appellant was receiving treatment for anxiety and depression, and McCary nevertheless determined appellant was competent to stand trial. Appellant has not argued that McCary's determination was erroneous, and appellant cites no authority for the proposition that his treatment for anxiety and depression made his waiver of counsel ineffective.

Appellant's misunderstanding of the law is not dispositive of his competency to waive counsel, as the competence required of a defendant seeking to waive his right to assistance of counsel is the competence to waive the right, not the competence to represent himself. *Prather*, 238 S.W.3d at 403 (citing *Godinez*, 509 U.S. at 399); *see also Faretta*, 422 U.S. at 836 ("We need make no assessment of how well or poorly Faretta had mastered the intricacies of the hearsay rule and the California code provisions that govern challenges of potential jurors on voir dire. For his technical legal knowledge, as such, was not relevant to an assessment of his knowing exercise of the right to defend himself."). The judge was thus not required to inquire further into appellant's competency merely because appellant raised his invalid defense during the hearing. We also note that every time appellant raised his jurisdictional defense, the judge at the *Faretta* hearing was able to focus appellant on the relevant issues. The judge was in the best position to determine whether appellant's waiver was constitutionally effective, and the record supports his determination. *See Williams v.*

---

[5] *Cf. Robinson v. State*, 16 S.W.3d 808, 813 n.6 (Tex. Crim. App. 2000) ("[I]t is axiomatic that a defendant who chooses to forgo the assistance of counsel and represent himself at his trial also necessarily waives his right to complain on appeal that he was rendered ineffective assistance." (citing *Faretta*, 422 U.S. 806 at 835)).

*State*, 252 S.W.3d 353, 356 (Tex. Crim. App. 2008) ("The trial judge is responsible for determining whether a defendant's waiver [of counsel] is knowing, intelligent, and voluntary.").

Appellant also misplaces his reliance on *Blankenship*. In that case, the Court of Criminal Appeals held that the trial court erred by *not* allowing the defendant to represent himself. *Blankenship*, 673 S.W.2d at 585. In addition, *Blankenship* did not involve an individual with a mental illness. Instead, the case centered on a criminal defendant whose assertion of the right to self-representation was denied because the trial court concluded he was unqualified due to a lack of legal proficiency. *Blankenship*, 673 S.W.2d at 584 ("While we may agree that the [defendant] flunked the trial court's impromptu evidentiary and procedural 'pop quiz,' the court's ruling that appellant was unqualified in that his lack of proficiency negated a 'knowing and intelligent' waiver, was an improper ground for denial of appellant's right to self-representation."). We thus disagree with appellant that *Blankenship* required the trial court to conduct further inquiry into his competency.

Appellant also argues that his waiver was ineffective because the trial judge failed to advise him of "the nature of the charge, the statutory offenses included within it, the range of allowable punishment, the impact of the enhancement paragraphs, the possible defenses to the charge, and any mitigating circumstances." In support of this contention, appellant points to the Court of Criminal Appeals' opinion in *Blankenship*, 673 S.W.2d at 583–84, and a plurality opinion of the Supreme Court of the United States in *Von Moltke v. Gillies*, 332 U.S. 708, 724–25 (1948).

Under the circumstances of this case, we disagree that the trial court's admonitions were insufficient to support a knowing and intelligent waiver. The trial court did inform appellant that he was charged with a felony, the statutory offense of theft of metals, and that he could be sentenced to up to ten years in prison if convicted. A similar admonition was held sufficient in *Collier*, 959 S.W.2d at 626.

13

Appellant asserts that the trial court was nevertheless required to inform him of possible defenses to the charge and any mitigating circumstances. In addition, when the facts of the case indicate that a defendant plans to mount an unmeritorious defense, appellant contends the trial court is required to correct a defendant's misunderstanding of the law.[6] We disagree.

Appellant has not pointed us to any possible defenses or mitigating circumstances of which the trial court failed to advise him. Moreover, *Blankenship* makes clear that "no formulaic questioning" or "script" is required to establish a knowing and intelligent waiver. 673 S.W.2d at 583. Neither *Blankenship* nor *Von Moltke* held that a trial court's admonitions were insufficient because the court failed to investigate and present possible defenses and mitigating circumstances, or failed to advise a defendant that a defense he planned to present was not legally viable.[7] Rather, *Blankenship* held that the trial court had erred by forcing counsel on a defendant on the ground that he lacked understanding of the law and was not qualified to represent himself. 673 S.W.2d at 584. *Von Moltke* involved an unrepresented German defendant who pleaded guilty to espionage after routine questioning by the trial court and without being advised at all of the consequences of her plea (including a possible death sentence). 332 U.S. at 709–10,

---

[6] To further support his contention that the court was required to inform him of the viability of his defense, appellant filed a letter brief after oral argument pointing us to an unpublished order issued by U.S. Circuit Judge Richard Posner sitting as a District Judge of the Northern District of Illinois. The order does not address whether a trial judge must inform criminal defendants attempting to waive counsel and proceed pro se of the merits of their defensive theories. Instead, Judge Posner states that a "defendant who has the cognitive ability to represent himself in a legal proceeding but refuses to confine his defense to testimony and other evidence, and to argument, that are permissible in a legal proceeding—refuses in effect to cooperate with the court and obey the law governing the proceeding—forfeits his right to defend himself." Judge Posner's order is based on the defendant's repeated injection of frivolous arguments into the proceedings after receiving warnings from the court. Nowhere does Judge Posner suggest that a judge may not accept a criminal defendant's waiver of counsel unless he informs the defendant of the merits of any defenses mentioned during the *Faretta* hearing.

[7] *See Alcontor v. State*, No. 11-07-00233-CR, 2009 WL 481864, at *5 (Tex. App.—Eastland Feb. 26, 2009, pet. ref'd) (mem. op., not designated for publication).

717–18. In addition, the defendant in *Von Moltke* did not assert a right to self-representation, and *Faretta* does not require a trial court to inform a defendant of possible defenses or mitigating circumstances before that right can be exercised.

Appellant also relies on *Buster v. State*, a case from the Tyler Court of Appeals. In *Buster*, the court of appeals held the defendant's waiver was inadequate because, among other things, the judge did not advise the defendant of the possible defenses to the charges and mitigating circumstances. 144 S.W.3d 71, 77 (Tex. App.—Tyler 2004, no pet.) (citing *Blankenship*, 673 S.W.2d at 583). *Buster* differs from our case, however, because the record in *Buster* did not show that the defendant was advised of the nature of the charges against him and the statutory offenses included within those charges. 144 S.W.3d at 77. The trial court further did not inform the defendant of the range of possible punishments, that he would not be afforded special treatment, and that he would "not be granted any relief from the technicalities of the rules of evidence and procedure." *Id.*

Because the trial court admonished appellant regarding each of those matters in our case, we hold that appellant validly waived his right to counsel. We overrule appellant's first issue.

## II. The trial court did not abuse its discretion by permitting appellant to conduct his own defense at trial.

In his second issue, appellant argues that even if he was competent to waive his right to counsel, the trial court abused its discretion by finding him competent to represent himself at trial.

### A. Standard of review

The trial judge is in the best position to determine whether a mentally ill defendant is competent to proceed pro se. *Chadwick v. State*, 309 S.W.3d 558, 561 (Tex. Crim. App. 2010). Because competence is a mixed question of law and fact that

15

turns on an evaluation of credibility and demeanor, we review the trial judge's ruling for an abuse of discretion. *Id.* We afford almost total deference to a trial judge's rulings on mixed questions of law and fact when the resolution of the issue turns on an evaluation of credibility and demeanor. *Id.* We view the evidence in the light most favorable to the trial judge's ruling. *Id.* We will imply any findings of fact supported by the evidence and necessary to support the trial judge's ruling. *Id.*

## B. Applicable law

The Constitution permits judges to take realistic account of the particular defendant's mental capacities in deciding whether a defendant who seeks to conduct his own defense at trial is mentally competent to do so. *Indiana v. Edwards*, 554 U.S. 164, 177–78 (2008). An individual may well be able to work with counsel at trial and thus satisfy the competency standard of *Dusky v. United States*, 362 U.S. 402 (1960), yet at the same time be unable to carry out the basic tasks needed to present his own defense without the help of counsel. *Edwards*, 554 U.S. at 175–76. Proceedings must not only be fair, they must appear fair to all who observe them. *Id.* at 177 (quoting *Wheat v. United States*, 486 U.S. 153, 160 (1988)). The Constitution thus "permits States to insist upon representation by counsel for those competent enough to stand trial under *Dusky* but who still suffer from severe mental illness to the point where they are not competent to conduct trial proceedings by themselves." *Edwards*, 554 U.S. at 178.

## C. Although not constitutionally required, there is evidence to support an implied finding that appellant was competent to conduct his own defense.

Appellant argues that under *Edwards*, the trial court abused its discretion in finding him mentally competent to conduct his own defense at trial. At the outset, we note that no hearing was held on whether appellant was competent to conduct his own defense at trial and no explicit ruling appears in the record. McCary twice found appellant competent to stand trial, and the judge at the *Faretta* hearing determined that

16

appellant competently waived his right to counsel. According to appellant, *Edwards* required the trial court to make a separate determination of his competency to conduct his own defense, which differs from his competency to stand trial or waive counsel. Appellant contends that, given his bizarre behavior, the trial court had a duty to further apprise itself of his mental state.

This case differs from *Edwards* in one important respect, however. *Edwards* decided whether the trial court improperly compelled a defendant diagnosed with severe mental illness to proceed with counsel. Appellant asks us to hold that *Edwards* means not solely that a trial court *may* insist on representation for defendants who are incapable of conducting trial proceedings due to severe mental illness, but also that a trial court *must* do so. We disagree that *Edwards* so holds.

In *Edwards*, the Supreme Court held that the Constitution "permits States to insist upon representation by counsel" for the subset of criminal defendants who are competent to stand trial but nevertheless unable to proceed pro se due to severe mental illness. *Edwards*, 554 U.S. at 178. The Constitution does not require States to impose counsel on this subset of defendants, however. *See, e.g., id.* at 173; *United States v. Berry*, 565 F.3d 385, 391 (7th Cir. 2009) ("The Constitution *may* have allowed the trial judge to block [the defendant's] request to go it alone, but it certainly didn't require it."); *United States v. DeShazer*, 554 F.3d 1281, 1290 (10th Cir. 2009) ("*Edwards* itself reaffirmed that a court may constitutionally permit a defendant to represent himself so long as he is competent to stand trial."); *see also Wright v. Bowersox*, 720 F.3d 979, 986 (8th Cir. 2013) ("[I]t would not be an unreasonable determination of clearly established federal law for the state court to decline to impose a heightened standard of competency, as *Edwards* announced no such requirement."). We therefore conclude that the trial court was not constitutionally required to conduct a further inquiry regarding appellant's competence to conduct his own defense once Dr. McCary found him competent to stand

trial.[8]

Moreover, even if such an inquiry were required, the trial court had discretion on this record to conclude that appellant was competent to conduct trial proceedings by himself. *Edwards* indicates that "severe mental illness" is a threshold requirement for mandating that a defendant accept the representation of counsel. 554 U.S. at 178. McCary concluded appellant suffered from a mild to moderate degree of mental illness, not from severe mental illness.

Furthermore, *Edwards* suggests that once a defendant is deemed competent to stand trial, the relevant inquiry in determining whether a court may insist on counsel is whether the defendant can "carry out the basic tasks needed to present his own defense without the help of counsel." *Id.* at 175–76. At trial, appellant cross-examined three of the state's four witnesses. He questioned Officer Deleon about the copper's chain of custody. He questioned Kim Yarbrough, an employee of Electric Power Design, about her ownership of the property, and due to appellant's questioning, Yarbrough conceded that she was not the owner of the copper even though she was named as the owner in the indictment. Appellant questioned Megan Schroeman, the Houston police officer who collected the copper at the scene, regarding perceived inadequacies in the State's evidence on the wire's approximate length and its value. During closing argument, appellant did not rely upon his jurisdictional defensive theory. Instead, he argued that the case should be dismissed due to certain deficiencies in the state's evidence.

Appellant responds by pointing to his unmeritorious jurisdictional defensive theory and the numerous motions he filed before trial as evidence that he suffered from

---

[8] We recognize that if evidence suggesting the defendant may be incompetent to stand trial comes to the attention of the trial court at any time before sentence is announced, the court on its own motion must suggest that the defendant may be incompetent and hold an informal inquiry. Tex. Code Crim. Proc. Ann. art. 46B.004 (West Supp. 2014), art. 46B.005(d) (West 2006). New competency evidence did not come to the court's attention during trial in this case, however, and appellant does not argue he was incompetent to stand trial.

18

severe mental illness. But appellant's mistaken belief regarding the validity of his jurisdictional defense is not dispositive of whether appellant was competent to stand trial or conduct trial proceedings by himself,[9] particularly given the other evidence discussed above regarding appellant's trial performance and mild to moderate mental illness.

Because a separate inquiry regarding appellant's competency to conduct his own defense was not constitutionally required, and in any event there is evidence to support an implied finding that appellant was competent, we hold the trial court did not abuse its discretion by allowing appellant to conduct his own defense at trial. We overrule appellant's second issue.

## CONCLUSION

Having overruled appellant's issues, we affirm the judgment of the trial court.

/s/    J. Brett Busby
        Justice

Panel consists of Justices Jamison, Busby, and Donovan.
Publish — TEX. R. APP. P. 47.2(b).

---

[9] *See Guerrero v. State*, 271 S.W.3d 309, 312–14 (Tex. App.—San Antonio 2008), *rev'd in part on other grounds*, 305 S.W.3d 546 (Tex. Crim. App. 2009) (concluding similar defensive theory amounted to "no evidence whatsoever to suggest to the court that [the defendant] was not competent to stand trial" and therefore holding trial court did not abuse its discretion in failing to conduct a further competency inquiry); *see also Jones v. Norman*, 633 F.3d 661, 669 n.3 (8th Cir. 2011) ("Neither *Edwards* nor any other precedent empowers a trial court to conduct a searching inquiry into a defendant's ability to successfully represent himself before allowing him to proceed pro se.").